with the day calendar at this point. The first case is Paysys International v. Atos. Good morning, Your Honors, and may it please the Court, I'm James Neal for Appellant Paysys International, Inc. This is an appeal from the July 7, 2017, order of Judge Forrest on Paysys' motion seeking voluntary dismissal of the case with prejudice on specified terms and conditions pursuant to Federal Rule 41A2. The only issue on this appeal today is whether the District Court erred by denying Paysys' request for leave to withdraw its motion. If the District Court granted Defendant Atos' request, the dismissal be conditioned on Paysys' payment of attorney's fees under the party's software license agreement and on Atos' ability to seek other fees by later motion. Paysys' motion was clearly framed so as to preclude any award of fees, and Paysys vigorously opposed any grant of fees in connection with the relief it sought. Rather remarkably, the District Court recognized as follows. Even as it denied Paysys an opportunity to withdraw its motion, and I quote, the Court recognizes that Paysys did not contemplate paying Atos' attorney's fees when it filed its motion under Rule 41A2. That the motion may have transmuted beyond what Paysys initially intended does not affect the Court's decision. But the plain language of the rule, though, on 41A2 says that the Court may grant the motion on terms that the Court considers proper. Why would that language be in there if the Court didn't have some discretion to vary from the language of the particular motion and grant additional relief? Well, Judge, that's correct. The Court has discretion to grant conditions to protect the Defendant or the opposing party from undue prejudice, legal prejudice. But if the Court varies the motion by imposing those conditions, it essentially transforms the motion from one for voluntary dismissal and here for voluntary dismissal with prejudice. And I'll get to the terms offered by Paysys in a moment. And under those circumstances, under this Court's decision in Gravatt, 1988, and in subsequent decisions in other circuits which applied to Gravatt. But Gravatt was just converting a motion for dismissal without prejudice to prejudice. That's correct. Isn't that different from our situation here? Not really. Our contention is that it's really the situation here is substantively indistinguishable because our motion sought dismissal with prejudice. And it sought it on certain terms and conditions including that Paysys would grant a worldwide license unrestricted by territory, freely assignable, which would have been a new license. It would have replaced the existing license and been much more favorable. And also that it grants a covenant not to sue. But by imposing this condition, which Paysys clearly opposed all the way down the line, and by overruling Paysys' request in the briefing of the motion that it be granted leave to withdraw if these conditions were imposed, the District Court essentially transformed a motion for voluntary dismissal with prejudice into a motion for involuntary dismissal or granted with prejudice dismissal involuntarily. It wasn't really prejudice though if the parties had agreed to attorney's fees for the prevailing party. I mean, that was contemplated when the settlement agreement was signed, right? It was contemplated if one party or the other prevailed on the merits of the territorial restriction claim under Section 60 of the agreement. But that issue was never resolved. It was never resolved on the merits, Your Honor. What you're basically suggesting is that by awarding the attorney's fees, they're essentially in essence granting judgment on that one remaining claim. Correct. Granting judgment on that one remaining claim and disregarding the terms and conditions upon which Paysys offered to dismiss its claims with prejudice. Wait. Did your motion initially say, please dismiss with prejudice and here's the license we're granting, et cetera, et cetera, and by the way, no attorney's fees? It didn't state it in those terms, Your Honor, but nevertheless, it was clear from all the briefing on the motion what relief was requested. For example, suppose the court had just said granted, nothing else, just granted to your motion. And then after the fact, Atos came back and said, and now we want attorney's fees because we prevailed up the wazoo here. We won practically everything in the case that we litigated. And then the other side granted not just a dismissal of the remaining claim, but a dismissal with prejudice that, as you just pointed out, granted us a better license than we had in the first place. So we have won, now award attorney's fees. Are you saying the district court at that point on those facts would have been precluded from awarding attorney's fees? I'm saying that on the record as it exists, including all of the briefing in which, for example, Atos in opposition recognized that the motion as made would have precluded its application for fees. It said to the district court, as it's saying to this court, PASIS is simply trying to avoid paying attorney's fees by seeking this dismissal with prejudice. And you were, right? Yes, we were. Okay. But we were because we'd offered significant value in return, the worldwide license, which basically gave Atos rights, which it didn't have. So once they put in . . . you're saying once they put the attorney's fees issue in play, then you should have been able to say, well, all right, if that's the deal, fine, let's go back to square one, decide the summary judgment motion, we'll take our chances, and if we lose, maybe we have to pay attorney's fees or we'll appeal. If we win, then the case can go to trial or we'll settle on some other terms or we'll work things out at that point. That's basically what you wanted to be able to do. Something like that. I'm not sure it's exactly accurate the way you stated it. Because it was clear to the parties and the district court that PASIS's motion was for with prejudice and without fees. And the conditions that I'm talking about evolved throughout the briefing. For example, the condition that we offered with respect to the worldwide license, that was in our briefs. The condition with respect to the covenant not to sue, that was in a letter to the court. The conditions that ATOS sought were in its opposition. So the parties . . . Your Honor, I understand. So everything got into play at that point, and you said, well, that's not the deal we were offering, so we'd like the opportunity to withdraw, right? I mean, that's the point. That's essentially it, Your Honor. But with a twist in that the district court has ordered, you know, a hearing on fees. ATOS has made its application seeking like five million plus dollars in fees. And as the record stands, we would ask the court to direct the district court to grant us the opportunity to withdraw. And as the court in Duffy, the Sixth Circuit decision that we've cited in our brief and other decisions have pointed out, it's very difficult for PASIS at this point to do anything other than exercise that option unless it knows what the district court . . . Yeah, but now you're asking . . . both sides would like to have indicative advance advisory rulings about attorney's fees issues, right? I mean, that's what both sides are . . . you're asking us not to put you back at square one. Actually, part of the relief you're asking for is to have the district court go further. Not just say, I think there should be attorney's fees here if this is going to be the outcome, but even to adjudicate how much the attorney's fees are going to be. And then if it turns out to be not to your liking and it's too much, then you withdraw the motion at that point, after the court has already adjudicated a whole bunch of issues that maybe it doesn't need to adjudicate at all. That's what we're asking for, but in lieu of that, if that seems unreasonable to the panel, then of course we would just withdraw the motion immediately. And could I just ask also, in terms of the language of the rule, are you suggesting that the rule could be read to say that the court can condition its grant of the motion? In other words, you've made a motion. The court can grant that motion with conditions, meaning maybe I'll grant the motion if you also agree to pay attorney's fees, whereupon you can say, no, in that case I don't want the motion. Isn't that the way you're reading the rule? I think that's fairly well established in the case law, Your Honor, especially the case law following Gravatt, in which many cases have taken the fundamental fairness rationale of Gravatt and Lau and GAF and said, no matter what the condition is that's imposed, if the plaintiff deems it to be too onerous to proceed with its voluntary motion, the motion's not voluntary anymore. And then your point, too, is that it's you that determines whether it's too onerous. It's not that the court is supposed to decide, I'll give you the chance to withdraw if I now thinks that the condition is an onerous one. It may be that the condition doesn't look too onerous to the court. I suppose to the district court, it didn't look too onerous, so the district court wouldn't have granted it. The court can't say, I'm going to do this even though it's too onerous. It's up to you, is your argument, to decide whether it's too onerous. And if the conditions that are set make the party offering the . . . moving for dismissal not want to dismiss anymore, then in any case, the party can withdraw the motion. That's right. And then the parties are back litigating the merits. And the point about too onerous is that that requirement really goes to the voluntariness of the motion. And if the court imposes conditions over the opposition and without consent of the moving party, it's no longer voluntary. And as a practical matter, I'd point out . . . But the court is conditioning is the grant of the motion. I'm not going to grant your motion to just walk away from here unless you agree to these additional conditions. Unless you agree. That's correct, Your Honor. And all the cases that we cite put that decision in the hands of the moving party. Because as a practical matter, I think that most district courts, if they impose conditions, are not going to consider them too onerous and are not going to want . . . and that would really fundamentally undermine the policy behind encouraging voluntary dismissal. If the parties think, if I make this motion, I'm going to be stuck with things I don't . . . If you make the motion, you're rendering yourself vulnerable to all sorts of . . . by saying, I'd like to dismiss this case on these terms, if the district court is allowed to add additional terms that are disadvantageous to you, the very making of the motion renders you vulnerable to anything that's not outrageous. Absolutely correct, Your Honor. Thank you, Mr. Neal. Thank you. Ms. Eisenstein. Ms. Eisenstein. I'm sorry. May it please the Court, Alana Eisenstein on behalf of AITOS, the APELE. PACE's voluntary dismissal motion was a gambit to avoid an adverse ruling on its territorial violation. I'm not sure it was, but it was a failed gambit, right? It was a failed gambit, and while it hoped that somehow it could use this gambit to escape the substantial attorney's fees that it incurred litigating over two years, entirely meritless claims, the district court wanted to assure itself that if it granted the voluntary dismissal with prejudice that PACE sought on the terms that PACE sought it, that if it granted that voluntary dismissal order, that it wouldn't prejudice AITOS by somehow . . . Sure, of course, and therefore the Court says, sorry, I'm not going to let you walk away from this and avoid the attorney's fees. Why don't they get to say, well, you know, we tried, but we were offering this on one set of terms. You've now made it a different set of terms. If that's the deal, we'd like to withdraw, and then, you know, nobody's even going to pay any more money for attorney's fees at this point. We've already briefed the summary judgment motion. Judge, decide the summary judgment motion. Well, Your Honor, I have two responses to that. First of all, under Gravatt and even under all of the decisions, the collected decisions from other circuits, this two-ownerist standard applies when the condition arises out of the independent consequence of the voluntary dismissal. Do you have any case where a court of appeals upheld the imposition of attorney's fees, where there's a fee-shifting statute, where there's a fee-shifting contract, or anything, as a condition of the grant of a voluntary dismissal motion? Well, Your Honor, there hasn't . . . I think there's like a yes or no. Do you have any case . . . There is not a case, Your Honor, that's directly posing those facts, but there also aren't cases where the party seeks to dismiss with prejudice, where typically there are not fees that are imposed with prejudice unless there's an independent contractual or statutory basis for doing so, which there was here. And so here, it's really, if you just change the word condition to consequence, you can see that if the district court, as Your Honor suggested, had simply done this as, we grant today, so ordered your voluntary dismissal on the terms that Peso suggested, and the very next day awarded fees . . . That would have presented an interesting case, it seems to me. If nobody brought this up in the briefing, if they just said, we ask to dismiss with prejudice with ABC conditions, district court said, that looks fine to me, granted. And then after it was granted, you made a motion for attorney's fees, and the argument would then be, well, it was a dismissal with prejudice, that changed the relationship between the parties in a way adverse to them and favorable to us, therefore, it follows as a matter of law that we should get attorney's fees. That might be a little different, and if the answer there is, you'd get the fees, we haven't had an interest . . . we haven't had a harmless error or something point here, except that you then put into play, you said, here's what the condition is really going to be. And they said, well, we didn't understand it to be that way, so we're sorry, we'd like to take it back. And you still get your attorney's fees if you prevail on the summary judgment motion. I don't see how you are harmed in any way by allowing them an opportunity to withdraw, and it looks like, you know, maybe they were trying to play it a little clever. Fair enough, lawyers can do that, and then it doesn't work. Why do they have to be held to have, in effect, agreed by voluntarily dismissing the case to get attorney's fees when they manifestly did not mean that and did not intend that? Well, Your Honor, let me start with the last premise that you ended with, which is that the premise of the voluntary dismissal motion was that the central dispute had been resolved and indeed resolved in Atos' favor. Their voluntary dismissal motion was completely silent as to fees, which is in stark contrast to most voluntary dismissal motions which say each party should bear its own fees and cost. And then they were the ones pushing for voluntary dismissal. We were the ones saying, we've briefed our summary judgment motion on the cusp of trial. Let's go and get a decision on the merits. Okay, if you're going to grant the voluntary dismissal, do so just in a way that won't prejudice us and won't go into the fees that we've already entitled to. All that the district court did when it evaluated the attorney's fees was to assure itself before it signed off on the voluntary dismissal that the voluntary dismissal wouldn't change the fee determination. So, versus a determination on the merits. I see that. If that's what it was doing, then the district court was doing exactly the right thing. That is to say, making sure that granting this motion isn't going to harm you. But why doesn't the plaintiff at that point get a chance to say, I see. If that's the way you understand it, okay, then we withdraw our motion. And then everybody's back to square one. Who got prejudiced how? How did you get prejudiced by that? Right, well I think at this point is where the prejudice comes in. And we're now more than a year out from when the point in time when we were ready to go to trial, when we had briefed our summary judgment motions, pens went down over our objection. We litigated not only the voluntary dismissal motion, but the substantial fraction of our attorney's fee motion. They essentially, the rule that pesos wants, because there's no additional legal prejudice that came from the condition. Above and beyond what would have happened if it were granted and then decided. What pesos wants is a right to a free peek at what the consequences of its voluntary dismissal with prejudice would be. A right to go ahead and wind back the clock to where they left off in the litigation. And whether or not that should be granted as a matter of district court discretion. Here the district court found that given the bait and switch effectively that pesos was making here. They premised their voluntary dismissal, mind you, on the lack of merit of their claim. They said it wasn't even worth litigating this last claim. Quantum of legal fees that you're seeking. Your request was $5.4 million that obviously must relate not to the remaining count, which is that one remaining summary judgment issue, which was before the court. But essentially, you're asking for attorney's fees to be broadly applied to the various other counts that were ultimately dismissed. Is that fair to say, and what is the authority for that, in light of the fact that the only issue before the court at the time of the request for voluntary dismissal was the one summary judgment issue before the court? Well, your honor, this was at the end of a long litigation, as your honor knows. And the attorney's fees did relate to a broad cross section of the claims. But as the district court's fee decision noted in the order that it already issued that the failure to succeed on many of pesos' other claims also arose out of the same territorial breach condition. For example, the conversion claim, the trade secret claim, and even arguably the copyright infringement claim, all were premised on the same breach of territorial restrictions that had the fee provision in it. And therefore, we would argue that those claims that were dismissed at a much earlier stage, independently gave rise to a right to fees. And that's another reason- The title remains to be litigated under the district court's ruling, right? Correct, your honor. I didn't say they have to pay $5.4 million in fees, it just said that they have to pay fees. Correct, your honor. And just on that point- Can I ask about free peaks? Weren't you asking for a free peak, in effect? They said, we'll move for dismissal with prejudice, following, and we'll also give the license, etc., etc. You could have just said, fine, judge, grant it, and then move for attorney's fees.  Was it not that the district court might take a different view at that point as to whether you would get attorney's fees? It wasn't a foregone conclusion. And you said, no wait, decide the attorney's fees ruling first before you grant this motion. Well, your honor, correct. This was an issue of timing, not substance. And that's exactly the point. All that happened here was that we asked the district court to assure itself and assure us that we would not be prejudiced if they were to grant the voluntary dismissal with prejudice. And giving us a worldwide license to the disputed software to give us all the relief we wanted, it seemed. But if that would eliminate the substantial right to attorney's fees that we had, we would oppose it. Why is it still a voluntary dismissal if it's not what they actually asked for? Now it becomes a dismissal with, I don't know if you want to call it prejudice or what you want to call it, with a judgment for potentially $5.4 million. If that's the terms and that's not what they were offering, well fine, why do they have to offer it anymore? I don't understand that. Your honor, it was voluntary because they were the ones who brought the motion with prejudice. And the condition didn't legally prejudice them any more than if the motion had been granted on the very terms that they offered it. And so it was nothing rendered at- You're not sure of that. You're telling me now you weren't sure that that's the rule. Is there any case that says that that is the rule? I think maybe it would be if I had to decide hypothetically, but I don't because that's a hypothetical. It did not happen that way. Instead, we had this litigation over the voluntary dismissal motion. And the judge set a condition on her grant of the motion. So I'm not sure, she's not granting anymore what they asked for. She's granting it with conditions, which is her right under the rule to say, I'm not going to grant this unless certain conditions are met. Your honor, may I answer? Your honor, yes, she granted it with an additional condition as rule 41 allows. The question is, did it render it involuntary? And where the condition does nothing more than impose the natural legal consequences with no additional prejudice to the defendant than the voluntary dismissal that they themselves sought. There is no right to withdraw. It is in the discretion of the district court whether to allow withdrawal. And here the district court properly said no. I just want to ask you a question about that too, and that is the 41A2 dismissals I've seen are usually just with prejudice. There's no other terms to it. This seemed kind of a unique situation where it wasn't just with prejudice, but you're essentially getting the total relief in the case, it seems to me, with the perpetual global license of the card pack software, right? So that, I'm trying to figure out who's playing the game here. If they're conceding that global license, aren't they really trying just to avoid the attorney's fees? Your Honor, my understanding of the reason they gave us that full global license was to eliminate our counter claims, which would have been another basis for us to object because we had a whole series of declaratory relief claims relating to the scope of that global license. I guess my question is, in one of these motions for a voluntary dismissal, if it has this kind of extra clause, this condition of total relief to the other side, is that different from when it's just a standard motion with prejudice and the judge adds something to that? I mean, is it a unique situation is what I'm asking. You mean that pesos offer this additional global license, or that there was a separate contractual independent right to fees? They offer it as part of the motion, the license. I think it's somewhat unusual, Your Honor, and as I said, it's my understanding that the purpose of doing that was to eliminate our counter claims, which are related to determining the scope of that license, and so by just granting us a worldwide license, it would essentially foreclose us from pursuing our declaratory relief claims. Foreclose you from, or actually grant you the relief? It would moot out our claims. But again, I think one of the significant factors here is that pesos was really hiding the ball from the outset on this voluntary dismissal motion. They say nothing about attorney's fees. But really, if you look at the design of their voluntary dismissal motion, it's all designed to try to fit within its interpretation of the prevailing party and voluntary dismissal case law, which they think means that they would that we would no longer have to pay the fees if they dismissed. Did you object on the basis that you'd lose your counter claims? We did not, Your Honor. Okay, thank you. There's nothing further. Thank you. Mr. Neal, you have a couple minutes? The first point I'd like to address is the assertion, which has been repeated without any substantiation, that pesos brought this motion to avoid an adverse determination on the merits, simply incorrect. We had briefed a summary judgment motion seeking summary judgment in Atos' favor on the APS portion of its contract claim. We had opposed summary judgment persuasively, in my view, that Atos sought on dismissing the territorial claims. There was no concession of lack of merit. What had happened simply- Was it a total relief by giving the license? It would have been. It would have put an end to everything and- Not just an end, but a beginning to a total license, right? Yes, it would have resolved not only the disputes before the court, but any future dispute that may have arisen under the then current license. So was that a total loss to you? No, it was simply, there was, based upon the code comparison that took place just days before we made the Rule 41 motion, it appeared that our software code, Pesos' software code, was used in fewer products put out by Atos than we had thought. And we had sought for a long time to get that code comparison. We couldn't get it. When we did, we said, this just isn't worth it monetarily, economically, to go forward. And that was the basis of the motion. Now, of course- After they spent $5.4 million over a period of several years litigating against claims that ultimately all turned out to be either baseless or not worth the trouble to bring. Not correct, Your Honor. We disagree with the district court's rulings on those claims. We think that they- But not worth appealing either. It would have been potentially worth appealing if the case hadn't been able to end at that point. It was a long process for both sides. And at the end of the day, we were not trying to avoid an adverse determination on the merits. We were saying, okay, let's move forward. It's just not worth it. You're saying this is tantamount to a settlement offer, which they did not accept. Very much like that, Your Honor. Except the problem is, if you had just put it to them, here's the settlement offer. We walk away, we give you this license, no attorney's fees, case dismissed with prejudice, we all walk away and go home. They would have said no. But instead, you tried to put it past the district judge, get the district judge to impose that settlement. Nobody was putting past anything, Your Honor. It was very clear to them that, as the panel has pointed out, our motion sought dismissal with prejudice and without fees. So what's the difference then between just offering a settlement on those terms, which they would have been free to reject, and then you would have been in exactly the position that you'd like us to put you in, which is back to square one, motion for summary judgment pending. And a request that the district judge do something for you to, in effect, impose that settlement. You ask the district judge, as you're now putting it, although it wasn't worded exactly that way, for a dismissal with prejudice, with the license, with no attorney's fees. And if the district judge had granted that, you would have been happy, and the settlement terms would have been imposed on them against their will. But they came back instead and said, no, we don't want that version, we want the version with the fees. Now did you actually, by not just putting it to them straightforwardly, this is what we'd like you to agree to, but instead asking the district judge to impose that settlement, render yourself vulnerable to the other side coming back and saying, well, if it's going to be up to you, judge, what the terms of this dismissal ought to be, we want the attorney's fees. No, Your Honor, we didn't, for a number of reasons. This natural consequence idea is really contrary to the nature of a Rule 41A motion. And that's set forth in law. The motion was not self-executing. It did not constitute a dismissal. It was, if the conditions were imposed, the dismissal depends on the conditions. So you can't say that it was an automatic consequence. We did ask the court to do something. Atos had the opportunity to object. They did object. And the consequence of that is to deny the motion and go forth with the summary judgment motions in any trial. I see the appeal of that. I mean, what you're asking for basically, though, is a ruling that whenever a party makes a motion under Rule 41, not as of right, but in the circumstance here after the answer and so on, whenever that's offered and the district judge sets conditions, the party that asked for the dismissal has a right in its discretion to say, well, we don't like those terms, so we can withdraw our motion. That's what you're basically asking. Many cases have so held. And it is pretty uniform among the courts that have considered the issue. Is there indeed any court that has ruled to the contrary and said you don't get an opportunity to withdraw? Not that I'm aware of, Your Honor, except for the district court in this case. Thank you, Mr. Neal. Thank you. Is there a decision on this case in Tarrant?